Thank you, Your Honor, and may it please the court. My name is James Kilroy, and I represent the appellant San Diego Steel Holdings Group, Inc. I'll be referring to my client as San Diego Steel. We're here, as you know, on a consolidated oral argument. There are two appeals. The first I will be calling the San Diego State Appeal. The parties to that are my client San Diego Steel as appellant and Mr. Leany in his individual capacity and in his capacity as a trustee of his individual trust as the appellee. The separate appeal filed by a company called Century 18 is, I will call it the Century 18 Appeal. That one, Mr. Wall is effectively the appellant, or is the appellant in that one. And again, San Diego Steel is the appellee in that one. I plan on addressing the San Diego Steel Appeal in this argument, reserving time. I hope I have it, and addressing my response to Mr. Wall on my reserve time. The issue on the San Diego Steel Appeal is actually fairly simple. From our standpoint, the jury heard a single claim. There were two claims that we think should have gone to the jury at trial. One for fraud, one for breach of fiduciary duty. The court on a Rule 50 motion before the jury convened struck the breach of fiduciary duty claim. The jury, as far as Mr. Leany is concerned, issued a defense verdict in his favor. We are not challenging the jury verdict in his favor on the fraud claim. Our position is, and remember, the fraud claim was decided by the jury on an elevated, clear, and convincing evidence basis. So clearly, the jury did not find that Mr. Leany committed fraud under the applicable burden of proof. The jury didn't get an opportunity, however, to determine the breach of fiduciary duty claim, because the district court dismissed that claim on Rule 50. Our argument, of course, is that the court, district court, committed error, reversible error, in granting the motion to dismiss the breach of fiduciary duty claim. The progression of this case is important, and I think explains maybe a reluctance on the district court's part to see the outcome that we envision as equitable. And the reason for that is, in this case, it was completely turned. Mr. Leany brought the claiming that he was entitled to a commission for work he did on a real estate transaction on behalf of my client, San Diego Steel. It was called a finder's fee in the original complaint. The tables turned because during discovery, we discovered, San Diego Steel discovered facts which we believe supported additional counterclaims and third-party claims based on an undisclosed side transaction that Mr. Leany had with the purchaser of the property, this DFA, or also known as Ahern. As a result of our discovery, these counterclaims were brought, including breach of fiduciary duty claims. From my perspective, it appears that the court was concerned at the complete turnaround, where we think the court properly dismissed the original claim for commissions, both at the Rule 12 stage, but because that was a dismissal without prejudice, again, at the Rule 56 stage. In other words, the district court properly analyzed the Nevada statutory scheme and determined that Mr. Leany was performing services as a real estate broker, that effectively he was asking for a commission, and that he's not... You say that it was a claim for a commission. Was it a claim for a commission, or was it a claim of a portion of the proceeds as a result of putting together the deal? I mean, is there anywhere that he described it as a real estate commission in his claim, Mr. Leany I'm referring to? He described it as a finder's fee in the original complaint. The district court, to answer your question directly, in the order granting summary judgment at ER 884 in the record, found that the agreement between Leany and the SDSHG parties was for payment of commission for services rendered as a real estate broker. So the district court found that that order, again, has not been cross-appealed. Whether or not, Your Honor, Mr. Leany used the word commission is not beside the point, but it's not the turning point. Meaning what really matters is, what did he say he was entitled to and why? He said he was entitled to a finder's fee, and he described in our reply brief, we bullet point all of the times before and during trial. He described why he thought he was entitled to the payment, if you will, and under the Nevada statutory scheme, we believe the district court properly found that we have a situation where the work performed was as a real estate broker. Now, what services did San Diego Steel request that Leany perform in connection with this transaction? So San Diego Steel was effectively the seller, and this is a little confusing, but since San Diego Steel was entitled to the proceeds of the transaction, they had an interest, obviously, in getting the best deal possible, and most money, so that the evidence at trial was, in fact, that they asked Mr. Leany volunteer that he could put together a good deal that would benefit both of them because it would get them money that they're entitled to, and also it would take down an obligation that he had under a secured note. So the answer is, they asked him to put together the best deal possible. He told them that he had this opportunity, and he acted on it. He described... Did he have the real estate broker agent sophistication to carry out that deal on his own? He must have thought he did, since he was a broker. Did San Diego Steel treat him and view him in that way? I mean, was that why he was retained? He was retained to get the best possible deal for both San Diego Steel and for himself, but from San Diego Steel's point of view, when we own the property or we own the rights to the proceeds, we want as much money as possible. Yes, we were relying on him to do just that. So why does that elevate him to the status of a fiduciary? Because as the district court properly found, he conducted services that are described as real estate broker services under the Nevada statutory scheme, and there now is no dispute that real estate brokers under the Nevada statutory scheme, even if they have one service that's described as a real estate broker service, are real estate brokers. So the district court properly found that he acted as a real estate broker. The court, from our standpoint, took that finding, simply found that because he was not licensed, he therefore is not entitled to a commission, then took that conclusion and determined that because there was not a registered real estate broker relationship with SDSHG, there was no fiduciary duty. Our argument is the fact that he was not registered may impact his ability to be paid, and we think the district court properly determined that he's not entitled to be paid, but the court also properly determined that he was a real estate broker. If he was, he owed fiduciary duties. I would like, unless there's any other questions. I think Judge Antune had a question for you. Did Mr. Laney hold himself out to be a broker? I don't think there was any evidence, Your Honor, that anyone used sort of those magic word labels. He held himself out to San Diego Steel. At the same time, Mr. Perkins was relying on other people to give him valuations of the property, right? He hired independent appraisers. There were no other brokers retained in this transaction, Your Honor. I'm trying to figure out how this works because these people don't appear to be aligned in any way. They seem to be adversaries historically until today, and that really hasn't changed much as it seems from the record I have. So if a fiduciary relationship is based on somebody in an inferior position reposing trust and somebody in a superior position, which is what I understand it to be, I want to know what you're relying on to conclude that there was a relationship of trust between Mr. Perkins and Mr. Laney. Your Honor, these parties were absolutely unaligned almost every level forever. The one topic that they were completely aligned on is this particular real estate transaction. Again, San Diego Steel wanted as much money for it as possible. Mr. Laney should have wanted that too because that took down an obligation. Mr. Perkins knew, didn't he, that Mr. Laney wanted the five acres, the undeveloped five acres, right? He knew because Mr. Laney told him. And then at trial, and it's in our briefs, Mr. Perkins told him in no uncertain terms, that's not fair. You cannot do that because that belongs to us. So yes, he learned of Mr. Laney's desire, but that was put to bed and we only found out later that he went ahead with that transaction that he had been forbidden. I'm curious. I don't want to take too much time. I'll stop after this question. I'll make sure he has plenty of time for rebuttal. Thank you. But what does the record disclose why Mr. Perkins elected to pay $80,000 rather than the agreed upon sum of $520,000? Your Honor, I thought that question may come up and I'm not sure. The only reference in the record that you have is a footnote in our either motion for summary judgment or reply. The answer is, and it's referenced in that. So there is a reference to it, but it may not be as fulsome as what I'm getting ready to tell you. There was a dispute post-closing about a prepayment penalty when the debt was paid. Don't go beyond the record. I just want to know what's in the record. That's what's in the record. And it's in a footnote and it refers to a dispute about default interest rate. That's what's in the record. It could have been better developed. It was a trial, but not in your record. I'd like to reserve the remainder of my time. Okay. I'll make sure you have a full opportunity to respond to your opposing counsel's arguments. Okay. We'll hear from Mr. Wall. Thank you, Your Honor. Can you all hear me? Yes. And Mr. Wall, let me just make it clear that I'd like you to address all issues so that we only have one rebuttal. I understand that, Your Honor. Thank you. Okay. And my name is Michael Wall and I am pleased to represent Todd Laney and Century 18 and all of their related parties. The factual situation that Mr. Kilroy has suggested here today is simply incorrect. It's a factual scenario that San Diego School has relied upon since the beginning of this action. That was the testimony of Mr. Perkins at trial and that testimony was contradicted by Mr. Ahern and it was contradicted by Mr. Laney. And the jury did not have one claim for fraud. It had four claims, three of which were fraud, civil conspiracy and failure of disclosure. There was specific findings in the interrogatory jury verdict on each of those. The story that San Diego Steel wants to tell here today was rejected by the jury and the jury's verdict is supported by substantial evidence. Well, he's not appealing. He's not challenging the jury's verdict. He's challenging the district court's 50A, I guess it was a 50A, grant of judgment as a matter of law on the fiduciary duty claim. That's correct, Your Honor. And that's illegal. So what the district court did was make a legal determination that on these facts that have been presented, San Diego Steel didn't have a fiduciary duty claim as a matter of law. That's correct, Your Honor. And the question that is raised is the rule 50 ruling. But the facts that San Diego Steel relies on are not the facts that the district court judge relied on after trial and they're not the facts found by the jury. And those facts are relevant to the legal question that is presented of fiduciary duty. It is not true that Laney volunteered and it's not true that Laney said he would try to put together a deal. It's not true that Laney said he would try to get the best deal that he could for the parties. All of that is not true. What happened was Gerdau had walked away from the deal, which meant Laney had the right to sell the property or do anything he wanted with the property. He made a deal with Ahearn. And that deal that he made with Don Ahearn was for a sale of the whole property with a transfer back of the five acres. And that was in order to deal with the situation of the GE loans. That deal is the deal that we own all of the property and we want all of it. But then San Diego Steel changed their mind. They said, we don't want the property anymore. We want to sell it. San Diego Steel did their own investigation. They determined that the property was worth approximately $10 million and they approached Mr. Laney and said, can you revive the deal with Mr. Ahearn? The deal with Mr. Ahearn, he didn't go out and find Mr. Ahearn and that was already there. San Diego Steel set the amount. They said, we want some amount upwards of $10 million. There was never a discussion ever in the record that you can find anywhere between Mr. Laney and anybody from San Diego Steel saying, go and get the most money you can get. And Mr. Laney never said... When you're using the term record, I assume you're referring to the evidentiary record that was before the district judge at the trial. I'm referring to the entire record, including the evidentiary record. No, no, no. You forget that the district court judge granted a Rule 50 motion for a judgment as a matter of law based on the evidence that was presented at trial. Yes, Your Honor. That's the record evidence that I'm... I don't know about anybody else, but that's what I'm concerned with. Your argument is that based on the evidence at trial, as a matter of law, they didn't establish the elements of a fiduciary duty claim. Yes, Your Honor. And that's exactly what I'm addressing. Based on all of the testimony that was given at trial, they did not establish a claim that could go to the jury. Because based on all of that evidence that was there, there was no evidence that there was any kind of relationship between the parties. And the judge had found that there was no such relationship. If you look at the claim, the fiduciary claim that was brought... Let me ask you this. How would you characterize the relationship between San Diego Steel and Laney in light of the evidence that was presented at trial? What was it? An agency relationship? They were... What was the relationship? Adversary parties in a land transaction, a triangle land transaction, where they were adversary parties based on the testimony of Mr. Perkins himself for San Diego Steel. They knew that Todd Laney had no incentive to make a deal for them, and they knew that he was not representing them. They gave him an incentive. They said, we will give you a portion of the proceeds so that he would have an incentive to self-deal. That's the testimony of Perkins. There's no evidence that there was any kind of a relationship between these... other relationship between these parties. And those issues of relationship had been resolved. The claim of fiduciary duty... In the claim of fiduciary duty, the only one that's before the court, the defendants didn't concede. They specifically, document 59, page 12, paragraph 42, the only substantive allegation. They didn't concede there was a relationship. They argued that because their false reading of Laney's first complaint and his amended complaint, he had admitted to a relationship, there should be a fiduciary duty. That was their claim. That was never... Mr. Wall, you would agree that you could have a fiduciary duty beyond the court relied on in determining that... in deciding the Rule 50 motion, right? There could be evidence of a fiduciary duty. In this case, it would be a statutory duty, which is not the same, but similar to that fiduciary duty. But that fiduciary... When you say statutory duty, you're referring to the real estate brokerage law? Brokers in Nevada have statutory duties. Was there a duty beyond that? There was no duty beyond that. Conceivably, you would agree that there could be a fiduciary duty outside the broker-client relationship, right? Outside the partnership relationship. It could. There could be such an agreement, but there has never been an allegation in this case that there was. San Diego still has argued only that the relationship is because the judge found that Mr. Laney was a broker. The judge did say that Mr. Laney could not get a commission. We think that was wrong, but we didn't pursue that. The judge said Mr. Laney couldn't get a commission because he wasn't licensed and he performed services of a broker. The judge didn't say on whose behalf he performed those services, and he never performed those on San Diego Steel. He performed those services on behalf of himself and on behalf of Century 18. There were never any services that were performed on behalf of San Diego Steel. So what I think I hear you saying is that the district judge basing the ruling on the broker-client partnership issues didn't address these other claims of fiduciary duty, but there's no evidence to support them. So the result was right, even though the reasoning might have been wrong. No, I don't believe there are any other claims of fiduciary duty that have been raised. The only claims that have been raised by San Diego Steel in their brief is that because he acted as a broker and because he claimed there was a partnership, there could be fiduciary duties. And the judge ruled there was no partnership, so there can't be a fiduciary duty there. And that ruling is correct as a matter of law based on this record. And the ruling that Mr. Broker of San Diego Steel is the only ruling that the record in this case will admit of because the adversary relationship here was simply that way from the beginning. From long before this action, if that property had been, if that five acres, San Diego Steel knew they were buying the property, they knew the price they were selling the whole property for. They had no claim to the five acres after that sale was done. Mr. Ahearn then decided later on that he wanted to buy the five acres back for Mr. Laney. Had Mr. Ahearn sold that property to someone else, they wouldn't be here complaining. The reason they're here complaining is that San Diego Steel has an idea that Todd Laney got anything out of this deal. That's what it's all about. And to suggest with that relation... Hold on, hold on, hold on. Could I just ask you one sort of basic question to help me understand what was going on here? I never dealt in real estate. I was never a broker or a real estate broker. I didn't have anything to do with the real estate industry, but how would characterize the core duties of a real estate broker? The core duties of a real estate broker are set forth in the case from the Nevada Supreme Court, OPH, and that is to find a property and to provide services to facilitate the sale of the property. If Mr. Laney worked as a broker for anybody, he did so for himself in century 18. If he sought to get the remuneration, he didn't seek to get the payment from them though. That's the difficulty. He sought to get the payment from his so-called adversaries. Because he was trying to get the proceeds, but that's not unusual in land transactions at all for one party to pay the commissions of the other party's broker. The seller pays them. That's a matter of contract. Yeah, but that militates toward finding that he's a broker though. If he is a broker, that's not the end of the issue. The question is who is he a broker for? The statute talks about on whose behalf you can sell and on behalf of century 18. He didn't perform any services on behalf of San Diego Steel. He didn't care. In fact, he testified, but he also felt like he had obligations to Mr. Ahern in this triangle transaction because he had entered into a deal with Mr. Ahern first. He wasn't representing them. Even if you call it a commission, it would be a commission for the services. Buyers pay sellers commissions all the time and the other way around. He performed services on behalf of San Diego Steel in order for them to get the money they received from the sale of the property. He sued San Diego Steel because San Diego Steel was the party that entered into a contract with him to pay that money. However you characterize that money, that doesn't mean make him San Diego Steel's broker. If you characterize it as a contract deal, then he gets the proceeds. If you characterize it as a commission, that commission is owed because of the services that he provided to century 18. But the statute contains a list of actions. If those actions are taken in the process of selling property, you're functioning as a broker. Again, we have not challenged the judge's conclusion that he was acting as a broker, but he wasn't acting as San Diego Steel's broker. Regardless of whom he was working for, if he's acting as a broker and he's not licensed to do so, then how did the district court err in saying he was not entitled to a commission? Because a person who acts as a broker in Nevada and who does not have a license can't collect a commission. That's what the statute says. It doesn't say he can't enter into transactions on his own behalf and provide services on behalf of himself and his own company. It just says he can't get a commission. Isn't that a commission by any other name, though? The judge didn't give him a commission and we have dropped our appeal on that issue. The only issue is whether or not he was San Diego Steel's fiduciary. That's fair. Okay. Counselor, you had your own appeal. I'll give you a minute or two to address the issues on your appeal because there's further argument after you finish up. Very quickly, this was a tripartite deal. It was put together as two deals. The same exact attorney's fees provision is in both of the contracts. They realized that there would be costs involved in doing it in that way, so they combined the two into one. Century 18 was the original seller. They were going to sell to Ahearn. Instead, it just went directly. Century 18 agreed to accept the responsibilities as a seller under the contract. San Diego Steel was released of all responsibilities and we believe that means as a seller. We don't believe that means that San Diego Steel was released of its obligations not to bring litigation and lose and then not have to pay attorney's fees under the contract. That's one reasonable interpretation, but wasn't the judge's interpretation also reasonable? I don't believe so, no. I don't believe that it could ever be a reasonable that a party who has entered into a contract that has an attorney's fees provision and the purpose of this was simply to switch out the names of who the seller was and the obligations of the seller that you could read that language into. There are no obligations under this contract whatsoever. There are obligations. It says relieved of all obligations that San Diego Steel is relieved of all obligations. But not of the obligation to comply with the contract and one of the things a part of the contract which San Diego Steel was a party to with good faith and fair dealing in every contract and another one was there's an attorney's fee provision that every one of those parties would have insisted upon because none of these parties would have entered into any agreement without it. It would have been fairly easy to put it into the amendment. It they believe that they did put it into the amendment. Explicitly. It would have been easy to just add a provision saying except for laws whatever it is or except for the attorney's fee. Because we have sophisticated parties here represented by council and so it would have been easy to to make it clear what the remaining obligations were. That's a fair suggestion your honor. I believe if you read the contract as a whole that attorney's fees provision should be included. Thank you your honor. We have some time for rebuttal on your main argument and as to this cross appeal or this related appeal. Thank you your honor. Just very briefly on the primary appeal rebuttal. Clearly council have a disagreement about the record as it relates to who Mr. Laney was working for. I would refer this court to our reply brief and in particular pages six and seven where we go through what Mr. Laney said about this most specifically er 437-46 where on the stand under oath he said that he was performing services including putting the deal together due diligence checking drawings and architectural papers and generally facilitating the Henderson property transaction on behalf of San Diego Steel. That's what he said. Now I think it's important to point out that that Mr. Laney also alleged that he was in a partnership with San Diego Steel and with the individuals. Now yes the judge properly dismissed that claim it at least goes to show that Mr. Laney admitted by pleading a partnership that he believed he was in a partnership. He had to have a good faith reason for that pleading. We all know that partners owe fiduciary duties to each other. If he believed he owed fiduciary duties and my client believed he owed fiduciary duties I think that's pretty relevant to the inquiry of whether he he owed fiduciary duties. I want to ask you one question about the district court judges two rulings. Is it your position that there is that the district court specifically found sort of like some sort of factual finding that he was acting as a broker? Absolutely in both orders. Well she didn't there was no evidentiary hearing was there? She she made a finding based on allegations in Mr. Laney's own complaint about what she just said. She just said I'm going to take all these allegations as true. At the dismissal stage that's she did. She she took all the allegations the complaint is true and she says well if all these are true um he can't get a commission under the statute. That's what she did at the dismissal stage then. Okay yeah okay jump jump jump forward to the trial. Why is why is she bound by what was First of all there's a step that's been skipped which is that there were two dispositive motions. She ruled at the order on the motion to dismiss then based on evidence presented by both parties she ruled it on a summary judgment that he was a that the services that he was seeking compensation for to Judge Rawlinson's questions were were for brokerage. She made that finding. Well she doesn't make findings all she does is I guess is take the take the facts that are presented to her on summary judgment and determines that as a matter of law on these facts he was acting as a broker or what he was not licensed. Fair enough then then if we ignore her prior rulings and just look at what happened at trial again I refer you to ER 437-46 and Mr. Laney described what he did and his description is consistent with the definition of a real estate broker in the state of Nevada. Okay do you want to respond to the attorney's fees issue? Just just very very briefly um I think that the parties have have briefed the issue. I'm just basically repeating in short version our position which is very simple based on and we agree now that the operative contracts for purposes of analyzing the issue are trial exhibits 69 and 70. There would have been real confusion if you sat through the trial but Mr. Wall and I can tell agree on that. If you look at 70 which is the amendment it in fact relieves my client from concept we want we it's not that there is a lack of mutuality of my client's obligation was to give up the opportunity to to purchase the property instead we all committed to a three-way transaction whereby Mr. Laney's company Century 18 sells to DFA directly with us getting the proceeds so we certainly gave something up there was consideration in exchange we were relieved from any obligation including an attorney fee obligation that we never owed to Century 18 that we conceptually did owe to DFA based on exhibit 69. Counsel is it your position that the amendment superseded the original contract? It is your honor. So would that be a novation? It it would be a little more complicated I think because remember on the amendment we're adding a so I think it's it's it's it's effectively a new contract the amendment and I have nothing further unless there's any other questions. Okay thank you counsel we appreciate appreciate your arguments this morning. The matter is submitted. Thank you.
judges: Paez, Rawlinson, Antoon